IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PATRICIA HINTZ,**                        Case No. 5:17 CV 1280

      Plaintiff,                        Chief Judge Patricia A. Gaughan

      v.                        Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                        REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Patricia Hintz ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated June 21, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in November 2013, alleging a disability onset date of August 1, 2006. (Tr. 148). On April 16, 2014, Plaintiff's SSI application was approved (Tr. 81), however, the Social Security Administration later determined Plaintiff's conditions were not disabling before her date last insured of December 31, 2011 (Tr. 109-10, 152). Therefore, her DIB application was denied initially and upon reconsideration. (Tr. 109, 115). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 118). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 26, 2016. (Tr. 37-

66). On March 23, 2016, in a written decision, the ALJ found Plaintiff was not disabled at any time from August 1, 2006 through December 31, 2011. (Tr. 23-30). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 4); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on June 19, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in January 1973, making her 40 years old on her application date, and 33 on her alleged onset date. (Tr. 148). She had four children, ranging in age from three months to fifteen years. (Tr. 47). Plaintiff lived with all four children. *Id*. She had prior work experience as a warehouse manager, hand packer, and bank teller. (Tr. 44-45). Plaintiff had not worked since 2005. (Tr. 46).

Plaintiff testified she was diagnosed with thyroid cancer in 2005 (Tr. 48), and her inability to work began in 2006, shortly after having her thyroid removed (Tr. 48-49). Following the surgery, Plaintiff experienced pain and aches in her right arm, extreme exhaustion, and migraines. (Tr. 49). Plaintiff missed several days of work and stopped working due to her symptoms. (Tr. 50-51, 170).

Plaintiff testified she had right arm pain throughout 2005 and was unable to lift anything, including light groceries. (Tr. 51). Plaintiff testified she still could not lift her 40-pound child, but could lift ten to fifteen pounds at a time and had no problems with reaching. (Tr. 52). Plaintiff had experienced tingling in her hands since 2005-2006. *Id*.

Following her cancer diagnosis in 2005, Plaintiff also experienced panic attacks, which caused her to feel dizzy and black out. *Id*. She was very emotional during that time, and often could

2

not get out of bed. (Tr. 53). Plaintiff testified the panic attacks continued to the present day, and were triggered by doctor's offices. (Tr. 53-54).

Following a thyroid cancer reoccurrence in 2011, Plaintiff developed obsessive compulsive disorder ("OCD"). (Tr. 55). Her obsessive rituals were triggered by an extreme fear of germs. *Id*. Plaintiff testified she required her family members to strip down and shower before entering her home. *Id*. She did not allow shoes in her home. *Id*. Nothing entered her home without first being wiped down. *Id*.

Plaintiff testified she stopped driving in 2012 when she experienced "brain fog" and memory problems. (Tr. 56). She also experienced anxiety related to microwaves and cell phones, refusing to own them. *Id*.

Relevant Medical Evidence[1]

Plaintiff was diagnosed with thyroid cancer in 2005, and underwent a thyroidectomy. (Tr. 787, 735). Her cancer returned in a lymph node in 2012. (Tr. 641, 711, 735). Plaintiff had the affected lymph node removed along with the surrounding lymph nodes. *Id*. In July 2013, Plaintiff was assessed with a parotid gland nodule. (Tr. 668).

---

1. The relevant time period for consideration in this case is August 1, 2006 (alleged onset date) to December 31, 2011 (date last insured). Therefore, the undersigned summarizes the medical records relevant to Plaintiff's impairments during that time, with a brief summary of Plaintiff's medical conditions prior to her alleged onset date. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (**"**In order to establish entitlement to disability insurance benefits, an individual must establish that he became "disabled" prior to the expiration of his insured status."). Post-dated evidence is immaterial unless it relates back to the period under review. *See Pickard v. Comm'r*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002); *Strong v. Comm'r of Soc. Sec*., 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Here, the undersigned summarizes only the later-dated opinion evidence relevant to Plaintiff's arguments.

Plaintiff had a psychological examination with John Vitkus, Ph.D., in November 2005. (Tr. 1204-08). Plaintiff's chief complaints were stress and dizziness. (Tr. 1204). She reported stress related to a recent divorce, bankruptcy, and thyroid cancer treatment. (Tr. 1205). Plaintiff was "very anxious" about an upcoming radiation appointment. *Id*. Dr. Vitkus recommended Plaintiff attend therapy sessions, and obtain medication through her primary physician. (Tr. 1208).

In December 2005, Plaintiff began cognitive behavioral therapy with Dr. Vitkus to address anxiety levels. (Tr. 1209-21). In a February 2006 visit, Dr. Vitkus noted Plaintiff made good progress, had an unremarkable mood, restricted affect, and goal-directed thoughts. (Tr. 1211). At her March 2006 visits, Plaintiff had positive participation in group therapy and her progress was "very good". (Tr. 1214-15). In May 2006, Plaintiff was making "good" progress. (Tr. 1219). She cancelled an August 2006 appointment. (Tr. 1221).

Plaintiff saw Pierre Lavertu, M.D., an ENT surgeon in January and March 2006 for a thyroid follow-up. (Tr. 658-59). During both visits, Plaintiff was concerned about small nodules on her neck. Upon examination, Dr. Lavertu found these lumps "of no concern clinically" and instructed Plaintiff to follow up in three months. *Id*. In August 2006, Dr. Lavertu reported Plaintiff was "doing well", but seemed concerned about "something" in her submental region. (Tr. 657). On examination, Dr. Lavertu found a small nodule, which was "probably a reactive adenopathy" and asked Plaintiff to return in three to four weeks. *Id*. Later in August, Plaintiff saw Dr. Lavertu again, who found the nodule area "cleared up very nicely". (Tr. 656).

In October 2006, Plaintiff saw Dr. Lavertu for swelling in her neck. (Tr. 655). On examination, Dr. Lavertu found her salivary system possibly obstructed on the left side, and placed her on antibiotics. *Id*. In November 2006, Dr. Lavertu noted Plaintiff was "doing better" but had

4

some issues with her submandibular gland. (Tr. 654). Dr. Lavertu found the area was still swollen and wanted to see Plaintiff again in three months for observation. *Id*.

In May 2007, Plaintiff saw Dr. Lavertu for reoccurring issues with strep throat. (Tr. 652). On examination, Dr. Laverto found evidence of tonsillitis, but no "worrisome masses or adenopathies". *Id*. In August 2007, Plaintiff saw Dr. Lavertu because she was concerned about a lump on the side of her neck. (Tr. 650). Palpation of the neck was negative for evidence of a suspicious mass or adenopathy. *Id*.

Plaintiff saw Adi Mehta, M.D., in January 2011[2] for a follow-up on her thyroid condition. (Tr. 331). Plaintiff was 29 weeks pregnant, and had "no distant metastasis and negative TG levels". *Id*. On examination, Plaintiff had swelling in the posterior right heel, and no discrete masses. *Id*.

In July 2011, Plaintiff saw Dr. Metha for a thyroid follow-up. (Tr. 338). She described tingling in her hands. *Id*. Plaintiff was also "very anxious" about a mole, and some other pregnancy-related skin issues. (Tr. 339). Dr. Metha recommended a follow-up in six months. (Tr. 341). In January 2012, Plaintiff returned to Dr. Metha. (Tr. 345). He noted her anxiety was "now stable" regarding the mole on her neck. *Id*. Plaintiff had a normal physical examination. *Id*.

In February 2014, Jigar Kadakia, M.D., performed a medical examination at the request of the State agency. (Tr. 692-94). He noted Plaintiff's chief complaints were cancer, panic attacks, and anxiety. (Tr. 692). Dr. Kadakia summarized Plaintiff's medical records and surgical history. (Tr. 692-93). On exam, Plaintiff had good cognition, but presented with panic attack symptoms. (Tr. 694). Dr. Kadakia assessed thyroid and salivary cancer, and panic attacks with anxiety. *Id*.

---

2. In her brief, Plaintiff notes she began seeing Adi Mehta, M.D., an endocrinologist, in 2006 after her first thyroid cancer diagnosis. (Doc. 12, at 4). Dr. Mehta's medical source statement confirms this (Tr. 707), however, the earliest treatment notes in the current record from this physician are from 2011 (Tr. 331).

Opinion Evidence

*Treating Physicians*

In October 2014, Dr. Mehta completed a post-cancer treatment medical source statement. (Tr. 707-10). Dr. Mehta noted he had treated Plaintiff since 2006 for thyroid cancer with local metastasis. (Tr. 707). He opined Plaintiff had chronic fatigue with fibromyalgia and depression. *Id*. Dr. Mehta noted Plaintiff also suffered from disturbed sleep, anxiety, and impaired concentration, all of which resulted from the cancer treatments. *Id*.

Dr. Mehta opined Plaintiff could walk one to three city blocks at a time. (Tr. 708). She could sit or stand for 45 minutes at a time, but could only sit or stand for less than two hours of an eight-hour workday. *Id*. He opined Plaintiff could not work an eight-hour workday. *Id*. She would need more than ten unscheduled breaks during a workday due to fatigue. (Tr. 708-09). Dr. Mehta found Plaintiff could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift fifty pounds. (Tr. 709). Plaintiff could occasionally twist, stoop, and climb stairs, and could rarely crouch or climb ladders. *Id*. She was likely to be off-task 25 percent of a workday *id.*, and was incapable of even "low stress" work (Tr. 710). Plaintiff would miss more than four days of work per month. *Id*. Dr. Mehta noted the limitations he found first presented in 2006-2007. *Id*.

*Examining Physicians*

E.M. Bard, Ph.D., performed a psychological examination at the request of the State agency in March 2014. (Tr. 700-06). During the exam, Plaintiff reported OCD symptoms, panic attacks, germ phobias, and a fear of death. (Tr. 700). She reported her OCD symptoms worsened when she underwent treatment for thyroid cancer in 2005 and 2012, and again during her salivary gland cancer treatments in 2013. *Id*. Plaintiff reported obsessive frequent hand washing, a fear of microwaves and high-tension wires, as well as a fear of items made in China. *Id*. Plaintiff was not

6

engaged in any mental health treatments. *Id*. Dr. Bard diagnosed OCD with poor insight, and illness anxiety disorder. (Tr. 705). Dr. Bard found Plaintiff exhibited significant OCD behaviors, which impacted her daily routine, marriage, and social relationships. (Tr. 706). She opined Plaintiff would not be able to respond appropriately to work pressures due to her condition. *Id*.

*Reviewing Physicians*

In April 2014, Paul Tangeman, Ph.D., concluded there was insufficient evidence to evaluate Plaintiff's condition before her date last insured, but as of her application date, she met the listing requirements for anxiety and OCD. (Tr. 77-78). In August 2014, David Dietz, Ph.D., affirmed Dr. Tangeman's findings. (Tr. 104).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 61-65. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way the ALJ determined Plaintiff was. (Tr. 61-62). The VE opined such an individual could not perform Plaintiff's past work, but could perform other unskilled, light-work jobs such as a hand packager, laundry laborer, or mail clerk. (Tr. 62).

ALJ Decision

In a decision dated March 23, 2016, the ALJ first concluded Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011. (Tr. 25). He found Plaintiff had not engaged in substantial gainful activity from her alleged onset date through her date last insured. *Id*. The ALJ found Plaintiff had severe impairments of malignant neoplasm of the salivary glands, papillary thyroid cancer, and anxiety disorder. *Id*. None of these impairments – individually or in combination – met or medically equaled a listed impairment. (Tr. 26). Next, the ALJ concluded:

through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could perform detailed but not complex tasks. She could perform tasks that involved only occasional interaction with co-workers. She could only have superficial contact with others. The claimant could not engage in arbitration, negotiation, or confrontation. She could not direct the work of others or be responsible for the safety or welfare of others.

(Tr. 27). Further, the ALJ found that, before her date last insured, Plaintiff was capable of performing past relevant work as a hand packager, noting the work did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 29). Relying on testimony from the VE, the ALJ concluded Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. 30). Therefore, the ALJ concluded Plaintiff was not under a disability at any time from her alleged onset date through her date last insured. *Id*.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff raises two objections to the ALJ's decision. First, that the ALJ erred in his evaluation of Plaintiff's treating physician Dr. Mehta, and second, the ALJ erred in his evaluation of a consultative examiner, Dr. E.M. Bard. (Doc. 12, at 1). The Commissioner responds that the ALJ's opinion is supported by substantial evidence and should be affirmed. (Doc. 13, at 15). For the reasons discussed below, the undersigned recommends the decision of the Commissioner be affirmed.

*Treating Physician Dr. Mehta*

Plaintiff first alleges the ALJ violated the treating physician rule[3] when he failed to properly evaluate the opinion of Dr. Mehta. Plaintiff asserts this opinion was rejected without good reasons. (Doc. 12, at 1). The Commissioner responds that the ALJ's decision to discount Dr. Mehta's opinion is supported by substantial evidence.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers,* 486 F.3d at 242.

---

3. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819. Plaintiff filed her claim in 2013 and thus the previous regulations apply.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

An ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).

When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Here, the ALJ referenced Dr. Mehta's medical source opinion (Ex. 12F) (Tr. 707-10), and gave reasons for the weight assigned:

> There are three medical source opinions – one from a treating source – that were created in 2014. These opinions are given little weight because they are inconsistent with the objective medical evidence discussed above and they do not pertain to the period of adjudication. (Exhibits 10F – 12F).

> The claimant has certain limitations because of her medically determinable impairments. However, her limitations do not preclude all levels of basic work-related activities. There is nothing in the record that justifies any further reduction in the residual functional capacity contained herein.

(Tr. 28).

The ALJ provided two reasons for the weight assigned to Dr. Mehta's opinion. *Id*. First, the ALJ pointed out the opinion was inconsistent with the objective medical evidence during the relevant time period, discussed previously in his opinion. *Id*. For example, the ALJ noted that, following the thyroid and salivary gland cancers, "the claimant was on a daily regimen of hormone therapy and she required frequent follow-up testing biopsies", and "the claimant's history of cancer . . . appears to be the catalyst behind the claimant's development of a severe anxiety disorder." *Id* (citing Tr. 26-27). Importantly, the ALJ stressed that "during the period of adjudication, the claimant's cancer was in remission and it did not cause any exertional or non-exertional physical limitations during the period of adjudication." (Tr. 28) citing Tr. 242 ("[Plaintiff] denies any discomfort" during a 2009 pre-op appointment to remove a nodule on her finger); Tr. 324 (Plaintiff was seen for a routine PAP test in 2007 with no pain complaints); Tr. 326 (In 2011, Plaintiff was seen for a pregnancy diagnosis with no pain complaints); Tr. 330 (In 2011, Plaintiff had "history of papillary thyroid cancer . . . negative TG levels. She is pregnant, 29 weeks, with no major issues or complications"); Tr. 331 (Plaintiff had a "negative whole body scan in 2007").

With Plaintiff's anxiety, the ALJ acknowledged "[Plaintiff] remained extremely concerned about a reoccurrence of her cancer." (Tr. 28). However, as he points out, progress notes from Plaintiff's treating psychologist Dr. Vitkus consistently note good progress and improvement in Plaintiff's anxiety levels throughout his treatment during the period of adjudication. *Id*. (citing Tr. 1211 (Showing of "[g]ood progress toward goals" and "[p]ositive participation in group".); Tr. 1213 ("[V]ery good progress toward goals", a full affect, and "goal directed thoughts".)). These progress notes are wholly inconsistent with the extreme limitations assigned by Dr. Mehta, where

he found Plaintiff was "incapable of even 'low stress' work" due to depression and anxiety. (Tr. 710).

An ALJ "must give the opinion of a treating source controlling weight if he finds the opinion . . . 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Bogle v. Sullivan,* 998 F. 2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). Here, the ALJ pointed out the extreme limitations assessed by Dr. Mehta were not consistent with the record evidence as a whole during the time period between the alleged onset date and the date last insured, and provided examples supported by the record. (Tr. 28). Thus, they were properly discounted.

Next, the ALJ pointed out that Dr. Mehta's medical source opinion was completed in 2014 – almost three years outside the period of adjudication. (Tr. 28). Evidence of disability obtained after the expiration of insured status is generally of little probative value. *See Strong v Comm'r of Soc. Sec*., 88 F. App'x 841, 845 (6th Cir. 2004); *see also Johnson v. Comm'r of Soc. Sec*. 535 F. App'x 498, 509 (6th Cir. 2013) (New information is not material when it does not relate to a claimant's condition on the date last insured). Plaintiff argues Dr. Mehta should have been given greater weight because he placed the same limitations on Plaintiff's activity *during* the period of adjudication. (Doc. 12, at 13). To support this assertion, Plaintiff points to the notation Dr. Mehta made in his opinion which found the limitations have occurred "since 2006-2007". *Id.* (citing Tr. 710). Again, the only treatment notes from Dr. Mehta in the record before the Court begin in 2011. (Tr. 331). To be eligible for benefits, it is Plaintiff's burden to establish she was disabled while the application was pending and provide a record to establish her claims. *See* 42 U.S.C. § 1382(c); *see*

13

*also* 20 C.F.R. §§ 416.330 and 416.335. Although Plaintiff is correct that Dr. Mehta opines these restrictions began around 2006-2007, in his 2014 assessment, the ALJ—and thus the Court—lacks the supporting treatment records. And, as discussed above, the ALJ sufficiently explained how the records that were before him failed to support the extreme limitations opined by Dr. Mehta during the time period relevant to his decision.

As the ALJ pointed out, to be entitled to disability insurance benefits, an individual must establish they became disabled prior to the expiration of her insured status. Tr. 28-29; *see Moon*, 923 F.2d at 1182. As noted above, Plaintiff's insured status expired on December 31, 2011. Therefore, Plaintiff must prove she became disabled prior to that date in order to qualify for DIB.

In this case, the ALJ did not find Plaintiff had *no* limitations, rather, they were less substantial than Dr. Mehta opined. The mere existence of impairments prior to the date last insured does not establish they were significantly limiting at that time. *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) (citing *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007)). Although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones,* 336 F.3d at 477. Further, contrary to Plaintiff's assertions, a lengthy explanation by the ALJ is not necessary to establish the "good reasons" required by statute. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

The undersigned therefore finds the ALJ provided good reasons for his treatment of Dr. Mehta's opinion and recommends the decision be affirmed in this regard.

14

*Consultative Examiner Dr. Bard*

Plaintiff alleges the ALJ erred in evaluating the opinion of a consulting psychologist, Dr. Bard. (Doc. 12, at 16). The Commissioner responds that the ALJ's decision is supported by substantial evidence. For the reasons outlined below, the undersigned recommends the decision be affirmed in this regard.

As an initial matter, an examining, but not treating, source is one who has examined Plaintiff, but did not have an ongoing treatment relationship. 20 C.F.R. §§ 404.1527 and 404.1502; SSR 96-2 (1996 WL 374188 at *1). This includes state agency physicians whose opinions must be considered by the ALJ. *Id*. Here, Dr. Bard examined Plaintiff on one occasion, March 11, 2014, for a psychological assessment through the Ohio Division of Disability Determination. (Tr. 700).

Here, the ALJ referenced Dr. Bard's medical source opinion (Ex. 11F), and gave reasons for the weight assigned:

> There are three medical source opinions – one from a treating source – that were created in 2014. These opinions are given little weight because they are inconsistent with the objective medical evidence discussed above and they do not pertain to the period of adjudication. (Exhibits 10F – 12F).
>
> The claimant has certain limitations because of her medically determinable impairments. However, her limitations do not preclude all levels of basic work-related activities. There is nothing in the record that justifies any further reduction in the residual functional capacity contained herein.

(Tr. 28).

As he did with Dr. Mehta, the ALJ discounted Dr. Bard's opinion at Exhibit 11F (Tr. 700-06), for two reasons: inconsistency and timing. *Id*. Both of these reasons are supported by substantial evidence.

Here, the ALJ found Dr. Bard's 2014 assessment was outside the period of adjudication. *Id*. Specifically, Dr. Bard found Plaintiff unable "to respond appropriately to work pressures in a

15

competitive work setting due to her mental health status *at the present time*". (Tr. 706) (emphasis

added). It is uncontested Plaintiff was disabled in 2014 when the assessment occurred, however,

Dr. Bard did not examine Plaintiff at any point during the time period at issue in this case, nor did

he offer an opinion as to her functioning prior to her date last insured. A doctor's opinion is

"minimally probative" when the examination occurs after the date last insured. *Swain v. Comm'r*

*of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010). Although Plaintiff described her mental

deterioration since 2005 to Dr. Bard, there was not any objective evidence in the assessment to

back up her assertions. (Tr. 705-06); *Rodgers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir.

2007) ("Whenever a claimant's complaints regarding symptoms, or their intensity and persistence,

are not supported by objective medical evidence, the ALJ must make a determination of the

credibility of the claimant in connection with his or her complaints 'based on a consideration of

the entire case record.'") (quoting 20 C.F.R. § 416.929(a)).

The undersigned therefore finds the ALJ's evaluation of Dr. Bard's opinion supported by

substantial evidence and recommends the decision be affirmed in this regard.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the

undersigned finds the Commissioner's decision denying DIB supported by substantial evidence

and recommends the decision be affirmed.


 s/James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court

within fourteen days of service of this notice. Failure to file objections within the specified time

16

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).